Jones, Judge,
delivered the opinion of the court:
The Menominee Tribe of Indians instituted this suit to recover the acquisition costs of swamp lands located within the borders of the reservation which was ceded to it by the defendant under treaty. It also seeks to recover the value of the timber removed by the defendant from such swamp lands since the date of the treaty, May 12,1854 (10 Stat. 1064).
Prior to the negotiation of the treaty which forms the basis of this suit, the plaintiff tribe of Indians had “ceded, sold, and relinquished” to the defendant all its lands in the State of Wisconsin wherever situated, and the defendant had agreed to give to the plaintiff Indians another tract of land and certain sums of money.
*240 After considerable investigation and exploration the treaty of May 12, 1854, supra, was entered into. By the terms of Article 2 of such treaty the defendant gave to the plaintiff Indians for a home a tract of land upon Wolf Biver in the State of Wisconsin, definitely described by metes and bounds, and containing 12 specific townships.
Prior to the signing of such treaty the Congress had passed what is known as the “Swamp Land Act” of 1850 (9 Stat. 519), by the terms of which the swamp and overflowed lands lying in the State of Arkansas were granted to that state, the lands to be identified and listed by the Secretary of the Interior, and patent to be issued upon request of the Governor of that state. The law* stipulated that its provisions should be and they were extended to all the other states.
There are swamp lands located within the boundaries of the reservation which was given to the Menominees by the treaty of 1854.
The question is whether the plaintiff is entitled to recover for these lands which were within the boundaries of the cession to the plaintiff by the treaty of 1854, but which had been theretofore given to the State of Wisconsin by the act of
1850, supra, to be listed, identified, and patented in the manner indicated.
We think the so-called “swamp lands” were included in the lands ceded to the Menominees for a home by the treaty of 1854, and that plaintiff is entitled to recover under the jurisdictional act.
The lands conveyed to the Indians are definitely described by metes and bounds in the treaty of cession. The tract of land, when all the acreage is included, is less than the tract which the Indians had surrendered.
The basis, the background, the previous history, and the negotiations leading up to the treaty show that the Indians were desirous of securing hunting lands and that the swamp lands were particularly suited for this purpose, being filled with all kinds of game.
Under direction of the Commissioner of Indian Affairs, Elias Murray, Superintendent of Indian Affairs, made a full study and reported on the condition of the Menominees in 1851. He reported that the Indians were “highly satisfied *241 with the location I have recommended.” He made special reference to the swamp areas and to the fact that “Bears, Foxes, and Martins appear to inhabit these Swamps.” The interpreter who accompanied the party and who was told to explore the area east of the Wolf Fiver in the company of the Indian chiefs, reported that they had “found a number of Cedar and Tamarack swamps where are many signs of Bears, deer, and other games” and that “the chiefs are highly pleased with the Country and say they hope the President will give it to them for a. home.”
While the survey covered a larger area than was finally ceded to the plaintiff tribe, it was in the same general section of the country and included most of the territory that was finally ceded by the treaty of 1854.
These facts are mentioned to indicate that a part of the inducement for the moving of the Indians from their former home to their new home, and one of the reasons for entering into the new treaty was the fact that the tract in question contained swamp lands which were suitable for hunting.
When this is followed by a treaty which without reservation definitely transfers by metes and bounds a tract that is smaller than they had formerly owned, and which was based upon a letter of instructions from the Commissioner of Indian Affairs stating that it contained 276,480 acres, which was the exact acreage contained within the 12 townships including all the swamp lands, as well as all other lands, it becomes manifest that the contract included all the lands within the boundaries specified in the treaty.
In 1928 the United States, in behalf of the plaintiff tribe of Indians, filed suit against the State of Wisconsin to cancel the patent relating to swamp lands within the Indian reservations, including that of the Menominees, and to remove the cloud on the title of the Indians.
In the same year a similar suit was brought against the State of Minnesota. In that case, United States v. Minnesota, 270 U. S. 181, the Supreme Court held that the State of Minnesota had taken title to the swamp lands by the act of 1850, and that the inclusion of such lands within the boundaries of the tract described in the subsequent treaty of cession did not operate to convey the legal title to the Chippewas.
*242 The defendant relies upon the decision in the latter case to support its contention that since the swamp lands had actually been transferred by the act of 1850, subject only to identification and patent as such, the plaintiff tribe had acquired no interest therein and the defendant had incurred no obligation relative thereto by the treaty of cession.
After the decision in the Minnesota case the defendant dismissed its suit against the State of Wisconsin.
There is no doubt that under the decision in the Minnesota case the title to the swamp lands embraced in the reservation ceded to the plaintiff tribe in 1854 is now in the State of Wisconsin, having been granted to that state in praesenti by the act of 1850, subject only to identification by the Secretary of the Interior and patent to be issued on the request of the Governor. Undoubtedly if the defendant had pressed the Wisconsin case instead of dismissing it, the decision in the Minnesota case would have been controlling.
Under the terms of that decision neither the Indians nor the United States on behalf of the Indians could maintain a suit against the State of Wisconsin for the legal title to the swamp lands in question. However, this does not touch upon the contractual rights between the defendant and the plaintiff. Whether or not a suit could be maintained for the legal title io the swamp lands in question, the facts remain that the plaintiff Indians had purchased certain lands from the United States; that they had paid a valuable consideration therefor.; that the land had been described by metes and bounds; and that no reservation or exception had been made of any lands embraced within the boundaries of the tract.
While there is some language in the Minnesota decision which would tend to indicate that lands theretofore transferred were not included within the treaty of cession, even though within its borders, that discussion was in the light of the contest over the legal title and the statements were made as bearing on the question of whether the United States or the State of Minnesota had the legal title to the land. It in no sense touched upon the obligation which the United States owed the plaintiff Indians under the terms of the treaty of 1854.
*243 The very fact that the United States saw fit to file suit in behalf of the Indians against the State of Wisconsin to cancel the title to the swamp lands is a strong indication that the Government recognized its obligation to the Indians in connection with such swamp lands; in other words, it had conveyed such lands to the State of Wisconsin by the act of 1850, and had again undertaken to convey the same lands to the Indians by the treaty of 1854.
It is not necessary to discuss the relationship existing between the defendant and the various Indian tribes. This has been discussed repeatedly and it is well settled that treaties must be construed liberally in behalf of the Indians, in view of the relationship which exists between them and the defendant.
Considering the events and transactions leading up to the treaty of 1854, as well as the text of the treaty itself, the plaintiff is entitled to recover the acquisition costs of such swamp lands, together with the value of that portion of the timber which has been removed therefrom and for which the plaintiff has not been paid; provided, however, in accordance with the terms of the jurisdictional act, that the United States “may in lieu of paying the present acquisition costs of such lands acquire and hold said lands in trust for the sole benefit and use of the Menominee Tribe of Indians.”
Only 15,276.14 acres have actually been patented to the State of Wisconsin. Defendant insists that recovery in any event should be limited to the acquisition costs of this definite acreage. We do not think so.
It is conceded that there are additional swamp lands within the reservation. At different times two lists were filed with the Secretary of the Interior, one by a joint commission appointed by the Governor of the State of Wisconsin and the Secretary of the Interior, and the other prepared by officials of the State of Wisconsin. The State of Wisconsin has repeatedly demanded a patent to these lands. Whether the failure of the Secretary of the Interior to perform the purely ministerial duty of designation was due to an effort to protect the Indians in the use of lands which were transferred to the State of Wisconsin by the Act of 1850, or for some other reason, is not clear. When he fails to perform such a duty it does not defeat the purpose of the act. As *244 was stated by the Supreme Court in the case of Wright v. Roseberry, 121 U. S. 488, 509, in which a similar question-affecting swamp lands was involved, “when that officer has neglected or failed to make the identification” it is proper “to identify the lands in any other appropriate mode which will effect that object.” Several efforts to adjust the matter have been made, including an agreement between the proper state officials and the Secretary of the Interior for a sale and transfer by the State of Wisconsin to the United States in trust for the Indians. This agreement failed for lack of necessary funds. Decades have passed. It is a continuing source of irritation. There should be an end to the controversy.
The jurisdictional act is broad. It directs the Court of Claims to investigate and, if it finds that the United States unlawfully failed to convey certain swamp lands to the plaintiff, to render judgment for the acquisition costs thereof. The identification of the lands is a necessary incident to determining the acquisition costs of such lands. Evidently it was the intention of the Congress that the whole matter should be brought to a conclusion.
Under Rule 39 (a) an interlocutory order is hereby entered, reserving the determination of the amount of the recovery and the amount of offsets, if any, for further proceedings.
Madden, Judge; Whitaker, Judge; Littleton, Judge; and Whaley, Chief Justice, concur.